UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__10/7/2021__
```

------------------------------------------------------------------X
                                :

YUK LUNG CHUNG,                   :

               Plaintiff,      :

                                :              21-cv-3861 (LJL)

        -v-                    :

                                :         OPINION & ORDER

335 MADISON AVENUE LLC,       :

                                :

             Defendant.      :

                                :

------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Defendant 335 Madison Avenue LLC ("Defendant") moves, pursuant to the Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6) and the Federal Arbitration Act, 9 U.S.C. §§ 1 *et*

*seq.*, to dismiss the complaint and compel arbitration. For the reasons stated herein, Defendant's

motion to compel arbitration is GRANTED, and the action is STAYED.

## BACKGROUND

      Plaintiff Yuk Lung Chung ("Plaintiff"), a citizen of New York, was employed as a

mechanic/technician by Defendant for approximately 10 years. Dkt. No. 1 ("Compl.") ¶ 13.

Plaintiff alleges that, during his employment, he "worked about 45-50 or more hours each week

for Defendant and sometimes more; 5-6 days a week except for about 2-4 weeks each year." *Id.*

¶ 15. Plaintiff further alleges that Defendant had a "policy and practice" of requiring Plaintiff to

work at least 15 minutes before his shift started but that Defendant did not pay Plaintiff for this

work. *Id.* ¶ 16. According to Plaintiff, this resulted in non-payment of overtime wages for

"about 1.25-1.5 or more overtime hours each week," with the exception of the 2-4 weeks each

year he did not work, for the duration of his employment with Defendant. *Id.* ¶ 16. At the

relevant times, Defendant allegedly did not provide Plaintiff with required wage statements and

notices.  *Id.* ¶ 20-21, 30-31.

Plaintiff was terminated from his employment with Defendant in March of 2021.  *Id.* ¶¶ 13, 17.  Approximately one year before he was terminated, Plaintiff complained about Defendant requiring him to work the additional 15 minutes each day without overtime pay, allegedly causing Defendant to retaliate against Plaintiff and eventually dismiss him.  *Id.* ¶ 17.

On April 30, 2021, Plaintiff filed a complaint claiming violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and various provisions of the New York Labor Law ("NYLL").  Compl. ¶¶ 1-4, 33-58.  Specifically, he claims that:  Defendant's failure to pay him overtime wages for the time he worked before his shift started violates FLSA, 29 U.S.C. § 207, and the New York Minimum Wage Act, N.Y. Lab. Law §§ 650 *et seq.*; Defendant's failure to provide notices and statements regarding compensation violates NYLL §§ 195(1), (3); and Defendant's termination of Plaintiff was retaliatory and discriminatory in violation of FLSA, 29 U.S.C. § 215, and NYLL § 215.

In response, Defendant moved to dismiss the complaint and compel arbitration.  Dkt. No. 15.  In support of its motion, Defendant argues that Plaintiff's employment with Defendant was covered by a contract between the Plaintiff's union, Local 94-94A-94B International Union of Operating Engineers AFL-CIO ("Local 94"), and a group of which Defendant is a member, the Realty Advisory Board on Labor Relations, Inc. ("RAB"), both acting on behalf of their members.  Dkt. No. 16 at 2; Dkt. No. 34-1.  This collective bargaining agreement ("CBA") contains a provision entitled "Employment and Discrimination," providing that:

> All claims alleging illegal discrimination under any of the above authorities, as well as claims alleging violations of the federal Fair Labor Standards Act, the New York State Labor Law, and any other federal, state or local wage payment statutes or regulations, shall be subject to the Agreement's grievance and arbitration procedure as the final, binding, sole and exclusive remedy for such violations, and employees covered by this Agreement shall not file suit or seek relief in any other forum.

Dkt. No. 34-1 at 57-58.  The CBA in turn sets out detailed procedures for grieving and arbitrating disputes.  *See id.* at 19-21.  In response, Plaintiff does not contest that these provisions are unambiguous or otherwise do not mandate arbitration, but rather argues that there is insufficient evidence to conclude that the CBA itself is valid and in effect.  Dkt. No. 28.

## DISCUSSION

Before compelling arbitration, a court must first determine whether an agreement to arbitrate exists between the parties.  *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017). If such an agreement exists, a court will then consider whether the dispute at issue falls within the scope of the agreement.  *Id.* at 74.  If there is a valid agreement to arbitrate that covers the dispute at issue, ordinarily the Court will compel arbitration.  *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

The threshold question in the Court's analysis is thus whether there is a valid arbitration agreement between Plaintiff and Defendant.  In deciding a motion to compel, the Court applies a standard similar to the summary judgment standard, which "requires a court to consider all relevant, admissible evidence submitted by the parties and contained in the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits" and to draw "all reasonable inferences in favor of the non-moving party."  *Nicosia v. Amazon, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (internal quotation marks and citations omitted).  "[W]here the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [a court] may rule on the basis of that legal issue and avoid the need for further court proceedings."  *Id.* (internal quotation marks and citations omitted).  A party cannot manufacture a disputed fact sufficient for trial by "utter[ing] general denials of facts on which the right to arbitration depends.  If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but

3

must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer &*

*Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

In support of its motion to compel arbitration, Defendant submitted a copy of the CBA

that governed Plaintiff's employment with the Defendant and that mandated arbitration for a

variety of claims.  Dkt. No. 34-1.  Plaintiff contends that, because the copy of the CBA submitted

to the Court was not signed, additional factfinding is required in order to determine whether the

agreement is valid and enforceable.[1]  Dkt. No. 28 at 6.  As courts have long recognized, because

national labor policy "encourages the formation of collective bargaining agreements," the

"technical rules of contract [formation] do not control the question of whether a collective

bargaining agreement has been reached," and such a contract need not be signed for it to be

effective.  *Am. Fed'n Television & Radio Artists v. Inner City Broad. Corp.*, 748 F.2d 884,

886-87 (2d Cir. 1984); *Int'l Bhd. Elec. Workers, AFL-CIO, Loc. Union No. 3 v. Charter*

*Commc'ns, Inc.*, 789 F. App'x 254, 259 (2d Cir. 2019) (summary order) (citing *Am. Fed'n*

*Television & Radio Artists*); *see also Trustees of Plumbers Loc. Union No. 1 Welfare Fund v.*

*Reem Plumbing & Heating Corp.*, 2009 WL 10700668, at *8 (E.D.N.Y. Mar. 31, 2009), *aff'd in*

*part, vacated in part, remanded sub nom. Reilly v. Reem Contracting Corp.*, 380 F. App'x 16 (2d

Cir. 2010) ("It is well settled . . . that the Statute of Frauds does not apply to collective

bargaining agreements, which are governed by federal law."); *Beth Israel Med. Ctr. v.*

*1199/S.E.I.U. United Healthcare Workers E.*, 530 F. Supp. 2d 610, 616 (S.D.N.Y. 2008) ("[T]he

---

[1] Plaintiff also makes various other arguments regarding supposed deficiencies in the copy of the CBA submitted to the Court, including that the agreement constituted insufficient evidence because it was not accompanied by an affidavit by someone with personal knowledge of the agreement and because it was not a complete copy with all relevant pages.  Dkt. No. 28 at 4-7. Defendant has since filed a declaration from the President of Local 94 attaching a copy of the CBA with no missing pages, rendering these arguments irrelevant.  *See* Dkt. Nos. 34, 34-1.

alleged unwritten agreement would not violate the Statute of Frauds because a CBA is enforceable even if it is unwritten."); *Mack Trucks, Inc. v. Int'l Union, United Auto, Aerospace & Agr. Implement Workers of Am., UAW*, 856 F.2d 579, 591-92 (3d Cir. 1988) ("In the field of labor relations, the technical rules of contract law do not determine the existence of an agreement.  Adoption of an enforceable labor contract does not depend on the reduction to writing of the parties' intention to be bound.").

Rather, the determination of whether a collective bargaining agreement has been reached "is guided by federal substantive law, created in light of a policy that 'encourages the formation of collective bargaining agreements.'" *Teamsters, Chauffers, Warehousemen and Helpers, Local Union No. 182 v. New York State Teamsters Council Health & Hospital Fund*, 909 F. Supp. 102, 107 (N.D.N.Y. 1995) (Pooler, J.) (emphasis omitted) (citing *Am. Fed'n of Television & Radio Artists*, 748 F.2d at 886).[2]  In determining whether a collective bargaining agreement exists, a court will look to the surrounding circumstances and to conduct that manifests an intention to follow the agreed-upon terms. *Teamsters, Chauffers*, 909 F. Supp. at 107 (considering whether the undisputed facts demonstrated the existence of a collective bargaining agreement containing an arbitration provision); *see also M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015) ("We interpret collective-bargaining agreements . . . according to ordinary principles of

---

[2] The Second Circuit, in *Abdullayeva v. Attending Homecare Services, LLC*, 928 F.3d 218 (2d Cir. 2019) recently reiterated that, in determining whether parties agreed to arbitrate, a court will look to principles of state contract law.  In that case, unlike here, the existence of a contract was not at issue; rather, the dispute centered around whether the valid collective bargaining agreement contained a mandatory arbitration provision.  The Second Circuit used principles of New York law to interpret the relevant language of the contract and determine whether the arbitration provision was mandatory or permissive. *Abdullayeva*, 928 F.3d at 222-24.  Where, as here, the parties do not contest that the relevant agreement contains a provision mandating arbitration, but rather whether the collective-bargaining agreement even exists, the Court follows the guidance for making that determination articulated in *American Federation of Television & Radio Artists v. Inner City Broad. Corp.*, 748 F.2d at 886-87.

contract law, at least when those principles are not inconsistent with federal labor policy.  In this endeavor, as with any contract, the parties' intentions control." (internal quotation marks and citations omitted)).

The Court has little difficulty concluding that the CBA constitutes a valid agreement between Plaintiff and Defendant notwithstanding the absence of signatures on the copy provided the Court.  Plaintiff admits that he is a member of Local 94, the union that entered into the CBA on behalf of its members.  *See* Dkt. No. 29 (Declaration of Plaintiff containing multiple references to "my union" and identifying Thomas Hart, President and Business Agent of Local 94, as the contact person in his union).  Local 94's president, Thomas Hart, submitted a declaration attaching the CBA and averring that the attachment "is a true and correct copy" of the CBA.  Dkt No. 34 ¶ 2.  He further declares that the attached CBA, including the grievance, arbitration, and "Employment and Discrimination" provisions, was negotiated and ratified by Local 94 and the RAB and is available on Local 94's public website, under a page entitled "Contracts."  *Id.* ¶¶ 3, 4.  Defendant also submitted a copy of a letter from Mr. Hart to the President of the RAB, explaining that Plaintiff "wishes to execute his right to a grievance and arbitration under the 2019 Collective Bargaining Agreement" to address an "unjust suspen[sion]."  Dkt. No. 17-3.  These facts evince Local 94's "intention to abide" by the agreement, even if the copy has no signature.  *Teamsters, Chauffeurs*, 909 F. Supp. at 107.  And Defendant, as a member of the RAB and the relevant counterparty to the agreement, has similarly demonstrated an intention to be bound by the CBA through its repeated invocation of the agreement throughout this litigation.  *See* Dkt. No. 16 (explaining that "335 Madison is, and for all relevant times has been, a member of the Realty Advisory Board on Labor Relations, Inc." and arguing that the grievance and arbitration provisions of the CBA dictate the proper forum for

this suit). Plaintiff's arguments that there is not a valid agreement to arbitrate are part and parcel of his position that there is insufficient evidence that the CBA is a valid agreement. But Plaintiff has offered no contrary evidence that puts the fact that there is a valid CBA, and thus, a valid agreement to arbitrate, in dispute. *See Oppenheimer*, 56 F.3d at 358 (explaining that general denials are insufficient to overcome an entitlement to arbitration sustained by evidentiary facts). Based on the undisputed facts in the record, the Court concludes that the CBA, complete with its arbitration provisions, is a valid agreement.[3]

Having concluded that the CBA is a valid and enforceable agreement, the Court now considers whether the claims asserted fall within the scope of the agreement to arbitrate. *Meyer*, 868 F.3d at 74. Plaintiff brings claims under FLSA and the NYLL, which "may be made subject to arbitration." *Lawrence v. Sol G. Atlas Realty Co., Inc.*, 841 F.3d 81, 83 (2d Cir. 2016). "In order for a mandatory arbitration provision in a CBA to encompass an employee's statutory discrimination claims, the inclusion of such claims must be unmistakable, so that the wording is not susceptible to a contrary reading." *Id.* at 84; *see* Compl. at 9 (bringing claims for "retaliation/discrimination" under FLSA and the NYLL).

Here, the CBA is "clear and unmistakable" that it covers Plaintiff's statutory claims. *Lawrence*, 841 F.3d at 82. The agreement states that "all claims alleging violations of the federal Fair Labor Standards Act, [and] the New York State Labor Law . . . shall be subject to the Agreement's grievance and arbitration procedure as the final, binding, sole and exclusive remedy for such violations . . . ." Dkt. No. 39-1 at 58. Plaintiff's claims plainly fall within this

---

[3] Plaintiff does assert that he cannot be compelled to arbitrate *even if* there is a valid agreement to do so because Local 94 has not yet grieved or arbitrated Plaintiff's claims, and Plaintiff cannot be left without a forum to vindicate his rights. Dkt. No. 28. However, Local 94 has represented that it is "willing to process any claims that [Plaintiff] has through the grievance and arbitration procedure in the CBA," Dkt. No. 34 at 2, and this argument is therefore no longer relevant.

description.  Because there exists an enforceable agreement to arbitrate between Plaintiff and

Defendant and Plaintiff's claims are all covered by that agreement, the Court will compel

arbitration.

Defendant requests that the Court dismiss the action.[4]  When all claims raised in a

complaint are referred to arbitration and a stay is requested, the FAA requires a court to stay the

proceedings.  *See Katz v. Cellco Partnership*, 794 F.3d 341 (2d Cir. 2015).  But where, as here,

no party requests a stay, a court can dismiss the proceedings upon compelling arbitration.  *See*

*Benzemann v. Citibank N.A.*, 62 F. App'x 18 (2d Cir. 2015) (summary order) (explaining that

where arbitration was compelled and party did not request stay before the district court, the FAA

did not require a stay of the proceedings); *Charter Commc'ns., Inc. v. Garfin*, 2021 WL 694549,

at *14 (S.D.N.Y. Feb. 23, 2021) (noting that "when a stay is not requested, the district court has

discretion in determining whether to stay or dismiss the case pending arbitration").

The Second Circuit has explained that staying a proceeding, rather than dismissing it,

supports "the FAA's underlying policy to move the parties to an arbitrable dispute out of court

and into arbitration as quickly and easily as possible" because it allows the parties to proceed

directly to arbitration without the uncertainties and expenses of additional litigation that may

accompany an appealable dismissal.  *Katz*, 794 F.3d at 346.  In light of this preference, "courts in

this Circuit regularly stay, rather than dismiss, complaints subject to an arbitration agreement."

---

[4] Defendant invokes Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6) as bases
for its dismissal request and recites the standards for each rule in its opening brief, but it rests its
argument for dismissal on the Court's discretionary power to dismiss a case after compelling
arbitration.  *See* Dkt. No. 16 at 21; Dkt. No. 33 at 10.  Defendant has provided no reason for
dismissing the case under FRCP 12(b)(1) or 12(b)(6).  These arguments are therefore deemed
abandoned.  *See Johannes Baumgartner Wirtschafts-Und Vermogensberatung GmbH v.
Salzman*, 969 F. Supp. 2d 278, 290 (E.D.N.Y. 2013) ("[A] Court need not entertain an argument
that was not briefed."); *Feingold v. RageOn, Inc.*, 472 F. Supp. 3d 94, 97 (S.D.N.Y. 2020)
(same).

*Charter Commc'ns., Inc.*, 2021 WL 694549, at *14.  Because the Court has not been presented

with a compelling reason to deviate from this practice, it declines to do so here.

## CONCLUSION

For the reasons stated in this opinion, the motion to compel arbitration is GRANTED.

This case is STAYED pending the outcome of the arbitration.  The motion to dismiss is

DENIED.


SO ORDERED.


Dated: October 7, 2021
       New York, New York                    _____
                                                      LEWIS J. LIMAN
                                                 United States District Judge